**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

STATE AUTO PROPERTY AND
CASUALTY INSURANCE CO.,

                Plaintiff,

     v.

TAYLOR FORTUNE GROUP
TENNESSEE, LLC,

                Defendant.

Case No. _____

**JURY DEMAND**

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff State Auto Property and Casualty Insurance Co. ("State Auto"), through counsel, files this Complaint for Declaratory Judgment against Defendant Taylor Fortune Group Tennessee LLC ("Defendant"), showing this Court as follows:

### NATURE OF THE ACTION

1.    State Auto brings this action under 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 57 to obtain a declaration of the parties' rights and obligations under an insurance policy issued by State Auto to Defendant ("the Policy"). Defendant has tendered a claim under the Policy for a lawsuit filed in the Superior Court of the State of California for the County of Alameda ("the Underlying Action"). Based on the plain language of the Policy, State Auto denies it has any duty to defend or indemnify Defendant in connection with the Underlying Action. The Underlying Action does not fall within any of the Policy's coverage provisions, and even if it did, unambiguous exclusions also eliminate any possibility of coverage. State Auto thus seeks a declaratory judgment that it has no duty to defend or indemnify Defendant in connection with the Underlying Action.

**THE PARTIES**

2.      Plaintiff State Auto Property and Casualty Insurance Co. is incorporated in the State of Iowa and has its principal place of business in the State of Ohio.

3.      Defendant Taylor Fortune Group Tennessee LLC is a limited liability company organized and existing under the laws of the State of Louisiana.

4.      Defendant does business as "TFGroup LLC." TFGroup LLC is also the name of a separate limited liability company organized and existing under the laws of the State of Louisiana.

5.      James Shelton is a registered agent for Defendant.

6.      TFGroup LLC's registered agent is James Shelton.

7.      Defendant's members are James Shelton and Matthew Martin.

8.      TFGroup LLC's members are James Shelton and Matthew Martin.

9.      James Shelton is domiciled in, and a citizen of, the State of Louisiana.

10.     Matthew Martin is domiciled in, and a citizen of, the State of Louisiana.

**JURISDICTION AND VENUE**

11.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). State Auto and Defendant are citizens of different States. State Auto is a citizen of Iowa and Ohio. Defendant is a citizen of Louisiana. The value of the matter in controversy exceeds $75,000, exclusive of interest and costs.

12.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). An actual and ripe controversy has arisen between the parties about any coverage owed under the Policy.

13.     Defendant is subject to personal jurisdiction in the State of Louisiana. Defendant is organized under the laws of the State of Louisiana, the insurance policy in question was issued and

delivered to Defendant in Metairie, Louisiana, and Defendant's members are citizens of the State of Louisiana.

14.     This Court is the proper venue under 28 U.S.C. § 1391(b). Defendant's registered office address and mailing address is in Metairie, Louisiana, which is located within this District. A substantial part of the events or omissions giving rise to this claim occurred within this District. Defendant is subject to this Court's personal jurisdiction.

BACKGROUND

I.     The Policy

15.     In January 2020, State Auto issued a business insurance policy bearing policy number PBP 2855775 01 to Defendant for the policy period from February 5, 2020, to February 5, 2021 ("the Renewal Policy"). The Renewal Policy was issued and delivered to Defendant in Metairie, Louisiana. A true and correct copy of the Renewal Policy is attached to this Complaint as Exhibit A.

16.     The Renewal Policy renewed the business insurance policy bearing policy number PBP 2855775 00 that was issued in February 2019 by State Auto to Defendant for the policy period from February 5, 2019, to February 5, 2020 ("the Original Policy"). The Original Policy was issued and delivered to Defendant in Metairie, Louisiana. A true and correct copy of the Original Policy is attached to this Complaint as Exhibit B.

17.     In general, the Renewal Policy refers to and incorporates the terms of the Original Policy. Thus, this Complaint refers to the Renewal Policy and Original Policy collectively as "the Policy."

18.     Throughout the Policy, the terms "we," "us," and "our" refer to State Auto, and the terms "you" and "your" include Defendant.

19.     The Policy provides four forms of insurance: commercial general liability ("CGL")

coverage, commercial property coverage, employment practice liability coverage, and commercial umbrella coverage. The Policy's commercial property coverage form and employment practice liability coverage form do not even potentially or arguably apply here; Defendant seeks defense and indemnity from State Auto for the Underlying Action under the Policy's CGL and umbrella coverage forms only. All insurance coverage, however, is subject to the Policy's terms, and State Auto has no duty to defend or indemnify Defendant in connection with the Underlying Action.

### A.    *The Commercial General Liability Coverage Form*

20.     Coverage A in Section I of the Policy's CGL form ("CGL Coverage A") provides coverage for "bodily injury" and "property damage" that is caused by an "occurrence," subject to the Policy's terms. Form CG0001 (04/13) at 1.

21.     As used in the CGL form, "Bodily injury" means "bodily injury, sickness or disease sustained by a person, including death, shock, mental anguish or mental injury sustained by that person at any time resulting from the bodily injury, sickness or disease." Form SL4000 (12/15) at 5; *cf.* Form CG0001 (04/13) at 12.

22.     The CGL form generally defines "Property damage" as follows:

> "Property damage" means:
> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
> For the purposes of this insurance, electronic data is not tangible property.
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Form CG0001 (04/13) at 14.

23.   A separate (but similar) definition of "Property damage" applies when an insured

seeks coverage under Part 12 of Form SL1202 (12/15):

> "Property damage" means:
> **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.
> **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or
> **c.**  Loss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate "electronic data" resulting from physical injury to tangible property. All such loss of "electronic data" shall be deemed to occur at the time of the "occurrence" that caused it.
> For the purposes of this insurance, "electronic data" is not tangible property.

Form SL1202 (12/15) at 5.

24.   As used in the CGL form, "Occurrence" means "an accident, including continuous

or repeated exposure to substantially the same general harmful conditions." Form CG0001 (04/13)

at 13.

25.   CGL Coverage A itself contains exclusions. *See* Form CG0001 (04/13) at 1–5.

26.   Exclusion 2(j) to CGL Coverage A is titled "Damage to Property." That exclusion

states:

This insurance does not apply to:

\* \* \*

**j.   Damage To Property**
"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

Form CG0001 (04/13) at 4.

27.     Coverage B in Section I of the Policy's CGL form ("CGL Coverage B") provides coverage for "personal and advertising injury" to which the Policy applies, subject to the Policy's terms. Form CG0001 (04/13) at 5.

28.     Under CGL Coverage B, State Auto has "no duty to defend the insured against any

'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply." Form CG0001 (04/13) at 5.

29.     The CGL form defines "Personal and advertising injury" as follows:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
> **a.**  False arrest, detention or imprisonment;
> **b.**  Malicious prosecution;
> **c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> **d.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> **e.**  Oral or written publication, in any manner, of material that violates a person's right of privacy;
> **f.**  The use of another's advertising idea in your "advertisement"; or
> **g.**  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Form CG0001 (04/13) at 13–14.

30.     The CGL form defines "Advertisement" as follows:

> "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
> **a.**  Notices that are published include material placed on the Internet or on similar electronic means of communication; and
> **b.**  Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

Form CG0001 (04/13) at 12.

31.     CGL Coverage B itself contains exclusions. *See* Form CG0001 (04/13) at 6–7.

32.     Exclusion 2(a) to CGL Coverage B is titled "Knowing Violation of Rights of Another." That exclusion states:

> This insurance does not apply to:
> **a.    Knowing Violation Of Rights Of Another**
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

Form CG0001 (04/13) at 6.

33.    Exclusion 2(i) to CGL Coverage B is titled "Infringement Of Copyright, Patent, Trademark Or Trade Secret." That exclusion states:

> This insurance does not apply to:
> * * *
> **i.    Infringement Of Copyright, Patent, Trademark Or Trade Secret**
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement". However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

Form CG0001 (04/13) at 6.

34.    Exclusion 2(f) to CGL Coverage B is titled "Breach of Contract." That exclusion states:

> This insurance does not apply to:
> * * *
> **f.    Breach of Contract**
> "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

Form CG0001 (04/13) at 6.

35.    The Policy contains other provisions that also limit coverage provided by the CGL form. *See* Form SL1202 (12/15); Form CG2106 (05/14).

36.    Form SL1202 (12/15) is an endorsement titled "Liability Plus Endorsement." Part

12(A) of that endorsement modifies CGL Coverage A, and it states:

> This insurance does not apply to:
>
> **p. Access Or Disclosure of Confidential Or Personal Information And Data-related Liability**
>    Damages arising out of:
>    **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or
>    **(2)** The loss of , loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data" that does not result from physical injury to tangible property.
>    However, this exclusion does not apply to liability for damage because of "bodily injury".

Form SL1202 (12/15) at 5.

37.     Part 12(B) of Form SL1202 (12/15) modifies CGL Coverage B, and it states:

> This insurance does not apply to:
> **Access Or Disclosure of Confidential Or Personal Information**
> Damages arising out of:
> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.
> This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Form SL1202 (12/15) at 5.

38.     Form CG2106 (05/14) is titled "Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – With Limited Bodily Injury Exception." Part A of that exclusion modifies CGL Coverage A, and it states:

This insurance does not apply to:

**p. Access Or Disclosure of Confidential Or Personal Information And Data-related Liability**
**Damages arising out of:**

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above. However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury". As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Form CG2106 (05/14) at 1.

39.   Part B of Form CG2106 (05/14) modifies CGL Coverage B, and it states:

This insurance does not apply to:

**Access Or Disclosure of Confidential Or Personal Information**
"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Form CG2106 (05/14) at 1.

### B.    *The Commercial Umbrella Coverage Form*

40.    Coverage A in Section I of the Policy's Umbrella form ("Umbrella Coverage A") provides coverage for "bodily injury" and "property damage" that is caused by an "occurrence," subject to the Policy's terms. Form CXS0001 (12/15) at 1.

41.    As used in the Umbrella form, "Bodily injury" means "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time," and it "includes mental anguish or other mental injury resulting from 'bodily injury'." Form CXS0001 (12/15) at 19.

42.    The Umbrella form defines "Property damage" as follows:

> "Property damage" means:
> **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
> For the purposes of this insurance, electronic data is not tangible property.
> As used in this definition, electronic data means information, facts or programs stored as or on created or used on, or transmitted to or from computer software, including systems and application software, hard or floppy disks, CD-ROMs, tapes drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Form CXS0001 (12/15) at 22.

43.    The Umbrella form defines "Occurrence" as follows.

"Occurrence" means:

**a.** With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you; or

**b.** With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you, "bodily injury" caused by accident or disease.

Form CXS0001 (12/15) at 17.

44. Umbrella Coverage B itself contains exclusions.

45. Exclusion 2(j) in Umbrella Coverage A is titled "Damage to Property." That exclusion states:

This insurance does not apply to:
* * *
**j. Damage To Property**
"Property damage" to:
**(1)** Property:
 **(a)** You own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or
 **(b)** Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto".
**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
**(3)** Property loaned to you;
**(4)** Personal property in the care, custody or control of any insured;
**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or
**(6)** That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

> Paragraph **j.(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.
> Paragraphs **j.(3), j.(4), j.(5)** and **j.(6)** of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.
> Paragraphs **j.(3),** and **j.(4)** of this exclusion do not apply to liability assumed under a written Trailer Interchange agreement.
> Paragraph **j.(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

Form CXS0001 (12/15) at 5.

46.     Coverage B in Section I of the Policy's Umbrella form ("Umbrella Coverage B")

provides coverage for "personal and advertising injury" to which the Policy applies, subject to the

Policy's terms. Form CXS0001 (12/15) at 9.

47.     The Umbrella form defines "Personal and advertising injury" as follows.

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
> **a.** False arrest, detention or imprisonment;
> **b.** Malicious prosecution;
> **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
> **f.** The use of another's advertising idea in your "advertisement"; or
> **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

Form CXS0001 (12/15) at 21.

48.     The Umbrella form defines "Advertisement" as follows.

"Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporter is considered an advertisement.

Form CXS0001 (12/15) at 19.

49. Umbrella Coverage B itself contains exclusions.

50. Exclusion 2(a)(1) in Umbrella Coverage B is titled "Knowing Violation of Rights of Another." That exclusion states:

This insurance does not apply to:

**a.** "Personal and advertising injury"

**(1) Knowing Violation Of Rights of Another**
Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"[.]

Form CXS0001 (12/15) at 10.

51. Exclusion 2(a)(6) in Umbrella Coverage B is titled "Breach of Contract." That exclusion states:

This insurance does not apply to:

**a.** "Personal and advertising injury"
* * *

**(6) Breach of Contract**
Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement"[.]

Form CXS0001 (12/15) at 10.

52. Exclusion 2(a)(9) in Umbrella Coverage B is titled "Infringement Of Copyright, Patent, Trademark Or Trade Secret." That exclusion states:

> This insurance does not apply to:
> **a.** "Personal and advertising injury"
> * * *
>> **(9) Infringement of Copyright, Patent, Trademark Or Trade Secret**
>> Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

Form CXS0001 (12/15) at 10.

53.     The Policy contains other provisions that limit coverage provided by the Umbrella form. Form CXS 23 00 05 14 is an endorsement titled "Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability." Part A of that endorsement modifies Umbrella Coverage A, and it states:

> This insurance does not apply to:
> **w. Access Or Disclosure of Confidential Or Personal Information And Data-related Liability**
> Damages arising out of:
> **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or
> **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.
> This exclusion applies even if damages are claimed for notification costs, credit monitoring
> expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.
> As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Form CXS 23 00 05 14 at 1.

54.     Part B of Form CXS 23 00 05 14 modifies Umbrella Coverage B, and it states:

This insurance does not apply to:

**Access Or Disclosure of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Form CXS 23 00 05 14 at 1.

## II.     The Underlying Action

55.     On May 10, 2021, Kytch, Inc. sued TFGroup LLC, Jonathan Tyler Gamble, J.L. Gamble Management LLC, and Taylor Commercial Foodservice, LLC in the Superior Court of the State of California for the County of Alameda, case number RG21099155 ("the Underlying Action"). A true and correct copy of the publicly available Complaint in the Underlying Action is attached to this Complaint as Exhibit C.

56.     According to Kytch, the Underlying Action is a case about corporate espionage.

57.     Kytch alleges that Taylor Commercial Foodservice, LLC ("Taylor") manufactures the ice-cream and milkshake machines used in McDonald's restaurants. And according to Kytch, Taylor designed those machines so that only Taylor-certified technicians could service and repair those machines.

58.     Kytch, however, allegedly developed a device and online system (together known as "the Kytch Solution") that modernized and demystified Taylor's machines, reducing the need for Taylor-certified technicians. The Kytch Solution is, according to Kytch, a novel invention that relies on confidential, proprietary, and trade-secret technology.

59.     Kytch allegedly launched the Kytch Solution in 2019, and McDonald's franchise

operators began testing the Kytch Solution in their restaurants.

60.     In 2020, Jonathan Tyler Gamble and J.L. Gamble Management LLC (together, "Gamble") allegedly expressed interest trying the Kytch Solution. According to the Complaint in the Underlying Action, Gamble is a "major" McDonald's franchisee in Tennessee and Mississippi.

61.     To allow Gamble's participation in a trial of the Kytch Solution while maintaining the confidentiality of Kytch's trade secrets, Kytch and Gamble allegedly executed a non-disclosure agreement ("the NDA"). Among other things, the NDA allegedly:

(a)     Required Gamble to maintain the confidentiality of information about the Kytch Solution's features, specifications, functionality, and performance;

(b)     Provided that Gamble may not (and may not allow others) to "make derivative works of, disassemble, reverse compile, reverse engineer, reproduce, distribute, republish or download any part of" Kytch's products or services; and

(c)     Provided that Gamble may not (and may not allow others) to "access or use [Kytch's] services in order to build or support, and/or assist a third party in building or supporting," products or services competitive to Kytch.

62.     But according to Kytch, Gamble violated the NDA, stole Kytch's trade secrets, and shared Kytch's trade secrets with Kytch's competitors.

63.     TFGroup LLC allegedly helped misappropriate Kytch's trade secrets.

64.     More specifically, Kytch alleges that TFGroup LLC is a Tennessee distributor that services Taylor ice-cream machines, competes with Kytch, and participated in obtaining Kytch's trade secrets.

65.     Kytch alleges that Gamble shared the Kytch Solution with TFGroup LLC—who Kytch did not authorize to receive Kytch's trade secrets—and that TFGroup LLC removed a Kytch

- 17 -

Solution device from one of Gamble's restaurants.

66.    Kytch also alleges that Gamble invited someone using the same telephone number as TFGroup LLC's managing partner to access Kytch and that the account tied to TFGroup LLC obtained access to Kytch's confidential information.

67.    Once TFGroup LLC gained access to Kytch's trade secrets, Kytch asserts, TFGroup LLC shared that confidential information with Taylor.

68.    Kytch alleges that TFGroup LLC and Taylor (who are collectively referred to in the Underlying Action as "the Taylor Group") knew that the Kytch information TFGroup obtained was subject to a secrecy agreement. Kytch also alleges TFGroup LLC and Taylor induced Jonathan Tyler Gamble to breach his confidentiality obligations in order to gain access to Kytch's trade secrets. Taylor is allegedly developing a device that directly competes with the Kytch Solution.

69.    In response to this alleged espionage, Kytch brought the Underlying Action against TFGroup LLC, Gamble, and Taylor.

70.    Count One of the Underlying Action is a cause of action against Gamble for breach of contract. That cause of action alleges Gamble breached the NDA and that Gamble intentionally misappropriated Kytch's confidential, proprietary, and trade-secret information

71.    Count Two of the Underlying Action is a cause of action against TFGroup LLC and Taylor for "tortious interference of contract". According to that cause of action, TFGroup LLC had knowledge of the NDA, acted intentionally to interfere with the NDA, and acted intentionally to induce Gamble to breach the NDA. Those alleged intentional actions allegedly damaged Kytch.

72.    Count Three of the Underlying Action is a cause of action against TFGroup LLC, Gamble, and Taylor under the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426–3426.11. According to that cause of action, TFGroup LLC misappropriated Kytch's trade secrets,

and TFGroup LLC allegedly knew or should have known that the misappropriated information was confidential trade-secret information. TFGroup LLC's acts were allegedly willful, malicious, and fraudulent.

73. In the Underlying Action, Kytch seeks compensatory damages, punitive damages, attorneys' fees, and other relief from TFGroup LLC and the other defendants.

## III.    The Parties' Positions

74. Defendant tendered the defense of the Underlying Action to State Auto.

75. Defendant contends the Policy provides coverage for the Underlying Action.

76. State Auto contends there is no potential coverage for the Underlying Action under the Policy.

77. As a result, a justiciable controversy exists between the parties as to their rights and obligations under the Policy.

COUNT ONE: DECLARATORY JUDGMENT
(NO COVERAGE PROVISION APPLIES)

78. State Auto repeats and incorporates the allegations in paragraphs 1–77 as if fully set forth herein.

79. The Underlying Action does not fall within the terms of any coverage provision of the Policy.

80. The Underlying Action does not allege facts that implicate the Policy's commercial property coverage form, and the Policy's commercial property coverage form does not provide any coverage for the Underlying Action.

81. The Underlying Action does not allege facts that implicate the Policy's employment practice liability coverage form, and the Policy's employment practice liability coverage form does not provide any coverage for the Underlying Action.

82.     The Policy's CGL Coverage A and Umbrella Coverage A do not provide coverage for the Underlying Action, since the Underlying Action does not allege or seek damage for "Bodily injury," "Property damage," or an "Occurrence," as those terms are defined in the Policy.

83.     The Underlying Action does not allege or seek damages for bodily injury, sickness, or disease.

84.     The Underlying Action does not allege or seek damages for physical injury to tangible property or for loss of use of tangible property.

85.     The Underlying Action does not allege or seek damages for loss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate electronic data resulting from physical injury to tangible property.

86.     If the Underlying Action did allege or seek damages for property damage (it does not), then Exclusion 2(j)(4) to CGL Coverage A and Exclusion 2(j)(4) to Umbrella Coverage A would exclude damage to property in Defendant's care, custody, or control.

87.     The Underlying Action does not allege or seek damages for an accident. Instead, the Underlying Action alleges that TFGroup and other defendants to the Underlying Action acted intentionally.

88.     Further, the Policy's CGL Coverage B and Umbrella Coverage B do not provide coverage for the Underlying Action, since the Underlying Action does not allege or seek damages for "Personal and advertising injury," as that term is defined in the Policy.

89.     The Underlying Action does not allege or seek damages for false arrest, detention, or imprisonment; malicious prosecution; wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; the publication of material that slanders or libels a

person or organization or disparages a person's or organization's goods, products or services; or the publication of material that violates a person's right of privacy.

90.     The Underlying Action does not allege or seek damages for any broadcast or publication by Defendant to the general public (or to specific market segments) about Defendant's goods, products, or services for the purpose of attracting customers or supporters.

91.     No other coverages potentially or arguably apply.

92.     As a result, State Auto has no duty to defend or indemnify Defendant in connection with the Underlying Action.

93.     State Auto is entitled to a judicial declaration stating that State Auto has no duty to defend Defendant against the Underlying Action because no coverage provisions even potentially or arguably apply.

94.     State Auto is also entitled to a judicial declaration stating that State Auto has no duty to indemnify Defendant for any settlement on behalf of, or judgment rendered against, Defendant in the Underlying Action, because no coverage provisions apply.

### COUNT TWO: DECLARATORY JUDGMENT
### (EXCLUSION FOR ACCESS OR DISCLOSURE OF CONFIDENTIAL INFORMATION)

95.     State Auto repeats and incorporates the allegations in paragraphs 1–77 as if fully set forth herein.

96.     Assuming the Underlying Action alleged and sought damages for "personal and advertising injury" as defined in the Policy (it does not), unambiguous exclusions eliminate any possibility of coverage.

97.     The Underlying Action alleges and seeks damages for injury that arises out of the alleged access to or disclosure of Kytch's confidential or personal information, including Kytch's trade secrets, processing methods, and/or other nonpublic information.

98.     Thus, under Form SL1202 (12/15), Form CG2106 (05/14), and Form CXS 23 00 05 14—the text of which is found in paragraphs 36–39 and 53–54 of this Complaint—the Policy unambiguously excludes any possibility of coverage for the Underlying Action, and State Auto has no duty to defend or indemnify Defendant in connection with the Underlying Action.

99.     State Auto is entitled to a judicial declaration stating that State Auto has no duty to defend Defendant against the Underlying Action because the Policy's exclusions for injuries that arise out of access to or disclosure of confidential or personal information unambiguously exclude any and all possibility of coverage.

100.    State Auto is also entitled to a judicial declaration stating that State Auto has no duty to indemnify Defendant for any settlement on behalf of, or judgment rendered against, Defendant in the Underlying Action, because the Policy's exclusions for injuries that arise out of access to or disclosure of confidential or personal information unambiguously exclude any and all coverage.

### COUNT THREE: DECLARATORY JUDGMENT
### (EXCLUSION FOR KNOWING VIOLATION OF RIGHTS OF ANOTHER)

101.    State Auto repeats and incorporates the allegations in paragraphs 1–77 as if fully set forth herein.

102.    Assuming the Underlying Action alleged and sought damages for "personal and advertising injury" as defined in the Policy (it does not), unambiguous exclusions eliminate any possibility of coverage.

103.    The Underlying Action alleges and seeks damages for injury allegedly caused by or at the direction of Defendant with the knowledge that the act would violate the rights of Kytch and would inflict injury.

104.    Thus, under Exclusion 2(a) in CGL Coverage B and Exclusion 2(a)(1) in Umbrella

Coverage B—the text of which is found in paragraphs 32 and 50 of this Complaint—the Policy does not provide coverage for the Underlying Action, and State Auto has no duty to defend or indemnify Defendant in connection with the Underlying Action.

105.    State Auto is entitled to a judicial declaration stating that State Auto has no duty to defend Defendant against the Underlying Action because the Policy's exclusions for injuries caused by or at the direction of Defendant with the knowledge that the act would violate the rights of another unambiguously exclude any and all possibility of coverage.

106.    State Auto is also entitled to a judicial declaration stating that State Auto has no duty to indemnify Defendant for any settlement on behalf of, or judgment rendered against, Defendant in the Underlying Action, because the Policy's exclusions for injuries caused by or at the direction of Defendant with the knowledge that the act would violate the rights of another unambiguously exclude any and all coverage.

### COUNT FOUR: DECLARATORY JUDGMENT
### (EXCLUSION FOR INFRINGEMENT OF TRADE SECRETS)

107.    State Auto repeats and incorporates the allegations in paragraphs 1–77 as if fully set forth herein.

108.    Assuming the Underlying Action alleged and sought damages for "personal and advertising injury" as defined in the Policy (it does not), unambiguous exclusions eliminate any possibility of coverage.

109.    The Underlying Action alleges and seeks damages for injury that arises out of the alleged infringement of Kytch's trade secret or other intellectual property rights.

110.    Thus, under Exclusion 2(i) in CGL Coverage B and Exclusion 2(a)(9) in Umbrella Coverage B—the text of which is found in paragraphs 33 and 51 of this Complaint—the Policy does not provide coverage for the Underlying Action, and State Auto has no duty to defend or

indemnify Defendant in connection with the Underlying Action.

111.    State Auto is entitled to a judicial declaration stating that State Auto has no duty to defend Defendant against the Underlying Action because the Policy's exclusions for injuries that arise out of the infringement of trade secret or other intellectual property rights unambiguously exclude any and all possibility of coverage.

112.    State Auto is also entitled to a judicial declaration stating that State Auto has no duty to indemnify Defendant for any settlement on behalf of, or judgment rendered against, Defendant in the Underlying Action, because the Policy's exclusions for injuries that arise out of the infringement of trade secret or other intellectual property rights unambiguously exclude any and all coverage.

## COUNT FIVE: DECLARATORY JUDGMENT
### (EXCLUSION FOR BREACH OF CONTRACT)

113.    State Auto repeats and incorporates the allegations in paragraphs 1–77 as if fully set forth herein.

114.    Assuming the Underlying Action alleged and sought damages for "personal and advertising injury" as defined in the Policy (it does not), unambiguous exclusions eliminate any possibility of coverage.

115.    The Underlying Action alleges and seeks damages for injury arising out of Gamble's alleged breach of contract.

116.    Thus, under Exclusion 2(f) in CGL Coverage B and Exclusion 2(a)(6) in Umbrella Coverage B—the text of which is found in paragraphs 34 and 52 of this Complaint—the Policy does not provide coverage for the Underlying Action, and State Auto has no duty to defend or indemnify Defendant in connection with the Underlying Action.

117.    State Auto is entitled to a judicial declaration stating that State Auto has no duty to

defend Defendant against the Underlying Action because the Policy's exclusions for injuries that arise out of breach of contract unambiguously exclude any and all possibility of coverage.

118.    State Auto is also entitled to a judicial declaration stating that State Auto has no duty to indemnify Defendant for any settlement on behalf of, or judgment rendered against, Defendant in the Underlying Action, because the Policy's exclusions for injuries that arise out of breach of contract unambiguously exclude any and all coverage.

### JURY DEMAND

State Auto demands a trial by jury on all issues so triable.

### RELIEF REQUESTED

WHEREFORE, Plaintiff State Auto Property and Casualty Insurance Co. respectfully asks for the following relief:

A.    A declaration that there is no coverage for the Underlying Action under the Policy, or under any other policy of insurance issued by State Auto;

B.    A declaration that State Auto has no duty to defend Defendant against the Underlying Action;

C.    A declaration that State Auto has no duty to indemnify Defendant for any settlement on behalf of or judgment rendered against CCI in the Underlying Action;

D.    Attorneys' fees and costs of suit incurred in this action; and

E.    Such other, further, or different relief to which State Auto may be entitled.

Respectfully submitted this the 23rd day of November, 2021,

**SCANDURRO & LAYRISSON, L.L.C.**

*/s/ Timothy D. Scandurro*
TIMOTHY D. SCANDURRO, Bar #18424
DEWEY M. SCANDURRO, Bar #23291, T.A.
607 St. Charles Avenue
New Orleans, LA  70130
Telephone:     (504) 522-7100
Facsimile:      (504) 529-6199
tim@scanlayr.com
dewey@scanlayr.com
*Attorneys for Plaintiff*
*State Auto Property and Casualty Insurance Co.*