**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

STATE AUTO PROPERTY AND
CASUALTY INSURANCE CO.,

          Plaintiff–Counter-Defendant,

  versus

TAYLOR FORTUNE GROUP TENNESSEE,
LLC,

          Defendant–Counter-Plaintiff.

Civil Action No. 2:21-cv-02174-ILRL-DPC

Section B
District Judge Lemelle
Magistrate Judge Currault

**STATE AUTO PROPERTY AND CASUALTY INSURANCE CO.'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff–Counter-Defendant State Auto Property and Casualty Insurance Co. ("State Auto") submits this memorandum in support of its Motion for Summary Judgment, seeking a declaration that State Auto has no duty to defend Defendant–Counter-Plaintiff Taylor Fortune Group Tennessee LLC ("TFG") in the Underlying Action described and defined below.

### INTRODUCTION

This case concerns whether State Auto must defend TFG against an underlying lawsuit in California under a business insurance policy that it issued to TFG. The Underlying Action, in turn, is a made-for-TV drama about ice cream, trade secrets, and corporate espionage. Ice-cream machines in McDonald's restaurants are often out-of-service, so the plaintiff in the Underlying Action—Kytch, Inc.—invented a proprietary system that lets restaurants troubleshoot problems without having to call a technician every time. This invention disrupted the status quo, and Kytch's competitor allegedly sought to stop Kytch from getting ahead.

According to Kytch, TFG played a key role in misappropriating Kytch's trade secrets. TFG allegedly obtained a proprietary Kytch device from someone who had contracted to keep it confi-

dential, and TFG used that person's credentials to access a proprietary website that interfaced with the device. In doing so, TFG allegedly accepted Kytch's Terms of Service, which prohibited using Kytch's confidential information to develop a competing product. But TFG allegedly did just that, reverse-engineering Kytch's invention and providing Kytch's trade secrets to Kytch's competitor.

After Kytch found out, it sued. TFG contends that State Auto must defend TFG against the Underlying Action, and State Auto is currently paying to defend TFG under a reservation of rights, pending resolution of that duty-to-defend issue here. TFG's insurance policy does not cover this scenario, and State Auto has no duty to defend.

TFG cannot show that the Underlying Action triggers any coverage under the Policy. Kytch does not seek any damages for "bodily injury" or "property damage." Nor does Kytch seek to hold TFG liable for damages for "personal and advertising injury." Kytch does not allege facts showing that TFG issued any "advertisement" or that TFG published a slanderous, libelous, or disparaging statement about Kytch or its products. Kytch does assert that McDonald's and the ice-cream-machine manufacturer made false statements about Kytch, but Kytch does not allege facts connecting TFG to those alleged statements. It is therefore no surprise that Kytch's claims for "Trade Libel" and "False Advertising" are against the manufacturer only—*not TFG*. And under Louisiana law, only factual allegations can trigger a duty to defend. Kytch's failure to allege facts linking TFG to a slanderous, libelous, or disparaging publication means TFG cannot show that coverage applies.

In addition, exclusions in the Policy unambiguously bar each claim against TFG. The Policy excludes coverage for knowing violations of the rights of another, and Kytch's factual allegations show that TFG acted intentionally—not accidentally. The Policy excludes coverage for any injury "arising out of" access or disclosure of confidential information, or for any injury "arising out of" infringement of trade secrets. Yet the crux of the factual allegations against TFG are that

it improperly accessed Kytch's confidential information and infringed on Kytch's trade secrets. Further, the Policy excludes coverage for injury arising out of a breach of contract, and Kytch has sued TFG for breaching Kytch's Terms of Service. Finally, the Policy excludes injury arising out of an alleged criminal act, and Kytch asserts a claim against TFG under the California Penal Code. For these and other reasons, State Auto has no duty to defend TFG against the Underlying Action.

**BACKGROUND**

### I.    The Policy

In 2019, State Auto issued a business insurance policy to TFG. Ex. A. And in 2020, State Auto issued a renewed policy to TFG. Ex. B. In general, the renewed policy refers to and incorporates the terms of the original policy. *See id.* at 13, 26, 40. State Auto thus refers to those contracts collectively as "the Policy." The Policy provides four forms of insurance: commercial general liability ("CGL") coverage, commercial property coverage, employment practice liability coverage, and commercial umbrella coverage. The property-coverage and employment-liability coverage forms are not at issue here; TFG seeks defense and indemnity from State Auto for the Underlying Action under the CGL and umbrella forms only. Both the CGL form and the umbrella form offer two main types of coverage: "Coverage A" is for "bodily injury and property damage," while "Coverage B" is for "personal and advertising injury." *See* Ex. A at 116, 120, 180, 188. All insurance coverage, however, is subject to the Policy's terms. Details of key provisions are explained in the Argument section of this brief.

### II.   The Underlying Action

TFG tendered a claim under the Policy for a lawsuit filed in California state court: *Kytch, Inc. v. Gamble, et al.*, No. RG21099155 (Cal. Super. Ct., Alameda Cnty.). That California case is called "the Underlying Action." State Auto is defending TFG in the Underlying Action, subject to a reservation of rights. *See* Rec. Doc. 21 at 24. State Auto now seeks a declaration that it has no

duty to defend TFG in the Underlying Action.

The Underlying Action is about corporate espionage. The plaintiff is Kytch, Inc.—a tech startup that tried to solve an alleged "repair racket" involving McDonald's ice-cream machines. Ex. C, ¶ 7. Taylor Commercial Foodservice, LLC ("Taylor") makes those machines. *Id.* ¶ 33. TFG is a distributor for Taylor. *Id.* ¶ 34; Ex. D, ¶ 61; Ex. E, ¶ 61.[1] And Jonathan "Tyler" Gamble is a McDonald's franchisee. Ex. C, ¶ 29.

According to Kytch, Taylor designed its machines so that only Taylor-certified technicians could repair and service them. *See, e.g.*, *id.* ¶¶ 9, 73, 85. But Kytch developed a device (the "Kytch Solution Device" or "KSD") and a related online system (the "Kytch Solution Platform" or "KSP") that modernized and demystified Taylor's machines, reducing the need for Taylor-certified technicians. *Id.* ¶ 10. Together, the Kytch Solution Device and the Kytch Solution Platform are called "the Kytch Solution." *Id.* ¶ 10 & n.4. The Kytch Solution is, according to Kytch, a novel invention that relies on confidential, proprietary, and trade-secret technology. *E.g.*, *id.* ¶¶ 10, 75, 100; Ex. D, ¶¶ 10, 90, 374–439; Ex. E, ¶¶ 10, 90, 373–438. The Underlying Action is about how TFG, Taylor, Gamble, and McDonald's allegedly tried to stop Kytch from competing with Taylor.

Kytch makes its allegations in three pleadings. The Underlying Initial Complaint asserted two claims against TFG. The Underlying First Amended Complaint ("FAC") expanded the allegations and brought more claims. The Underlying Second Amended Complaint ("SAC") then slightly pared back Kytch's claims.

---

[1]     The Underlying Action names "TFGroup LLC" as the defendant, and "TF Group LLC" is a "d/b/a" listed for TFG on the Policy. Ex. A at 20; Ex. B at 21. The Underlying Initial Complaint sometimes referred to "Taylor Group," which it defined to include both Taylor and TFG. Ex. C, ¶ 35. But TFG and Taylor are separate companies, and the allegations in the Underlying FAC and Underlying SAC reflect that reality. *See* Ex. D, ¶ 61; Ex. E, ¶ 61.

### A.   The Underlying Initial Complaint

Kytch brought the Underlying Action in May 2021. Ex. C. According to its initial pleading, Kytch was running a product trial for the Kytch Solution in 2020, and Gamble expressed interest in participating. *Id.* ¶¶ 11, 43, 162. To allow Gamble's participation while maintaining the confidentiality of Kytch's trade secrets, Kytch and Gamble executed a "Kytch Trial Agreement," which included a non-disclosure agreement ("NDA"). *Id.* ¶¶ 30–31, 43–47; *see also, e.g.*, *id.* at 57, 75.

But according to Kytch, Gamble violated the NDA, took Kytch's trade secrets, and shared those trade secrets with Kytch's competitors. *See id.* ¶¶ 177–202. More specifically, Kytch alleges that Gamble impermissibly shared the Kytch Solution with TFG—giving a Kytch Solution Device to TFG and giving TFG his login credentials for the Kytch Solution Platform. *See id.* TFG then accessed the Kytch Solution Platform and reverse-engineered the Kytch Solution Device. *See id.* ¶¶ 177–202, 256. Once TFG accessed Kytch's trade secrets, Kytch asserts, TFG shared Kytch's confidential trade secrets with Taylor. *Id.* TFG used the information to help Taylor develop a competing product. *See id.* ¶¶ 20, 202.

Kytch sued Gamble for breach of contract (Count I). *Id.* ¶¶ 218–39. It also brought two claims against TFG and Taylor. One was for "Tortious Interference of Contract" (Count II). *Id.* ¶¶ 240–46. According to that claim, TFG "acted intentionally to interfere with and induce Gamble to breach the Kytch Trial Agreement by providing it with access to the Kytch Solution Device and Platform." *Id.* ¶ 243. TFG also allegedly induced Gamble to breach his confidentiality obligations, allowing TFG could access Kytch's trade secrets. *Id.* ¶¶ 244–45. Kytch's next claim was under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq*. (Count III). Ex. C, ¶¶ 247–65. In that claim, Kytch alleged that TFG "misappropriated Kytch Trade Secrets." *Id.* ¶ 256.

### B.   The Underlying First Amended Complaint

In April 2022, Kytch amended its pleading by filing the Underlying FAC. Ex. D. That

pleading maintained the same basic allegations that Taylor, Gamble, and TFG worked to misap-

propriate Kytch's trade secrets. *See, e.g.*, *id.* ¶¶ 79–88, 169–222, 265–78. For example, it alleged:

- "TFG … misappropriated Kytch's trade secrets." *Id.* ¶ 61.

- "TFG was, at all times, working in concert with Taylor to misappropriate Kytch's trade secrets." *Id.* ¶ 278.

- "TFG improperly took and continues to retain Kytch 'Proprietary Information' to develop products and to otherwise compete against Kytch." *Id.* ¶ 529.

- "TFG induced Tyler Gamble to breach his secrecy obligations to gain access to Kytch's confidential information and trade secrets." *Id.* ¶ 271.

- "TFG improperly obtained a [Kytch Solution Device] from Tyler Gamble," *id.* ¶ 68, "accessed Kytch's confidential technology," *id.* ¶ 191, and assisted in "reverse engineering" a Kytch Solution Device, *id.*¶ 528; *see also id.* ¶¶ 23, 183, 202–05.

- TFG obtained Gamble's Kytch Solution Platform login information. *Id.* ¶¶ 183–84, 440. TFG then used that login information to access the Kytch Solution Platform, including Kytch's confidential information. *Id.* ¶¶ 23, 185–90, 205, 277.

- TFG sent screenshots of password-protected parts of the Kytch Solution Platform to Taylor—including to the employee who led the development of Taylor's competing device. *Id.* ¶¶ 23, 192–93, 321.

- TFG knew that Kytch's customers had secrecy obligations, but TFG intentionally selected Kytch's customers to develop Taylor's competing product and induced Kytch's customers to breach their secrecy obligations. *Id.* ¶¶ 366–69. McDonald's and Taylor relied on TFG "to identify and solicit Kytch's customers to obtain Kytch's innovative technology." *Id.* ¶ 20.

In the Underlying FAC, Kytch also alleged that in the course of (improperly) accessing the

Kytch Solution Platform, TFG accepted Kytch's Terms of Service. *Id.* ¶¶ 517–26. Among other

things, those Terms of Service provided that TFG:

- Could not use Kytch's trade secrets to "build or support, and/or assist a third party in building or supporting" a product or service that is "competitive to" Kytch;

- Could not "modify, make derivative works of, disassemble, reverse compile, reverse engineer, reproduce, distribute, [or] republish" any part of the Kytch Solution Platform;

- Could not "transfer," "distribute," or "disclose" any part of the Kytch Solution Platform to "any third party"; and

- Could not "commercially exploit" any part of the Kytch Solution Platform.

*Id.* ¶¶ 522–25. But TFG allegedly breached those obligations. *Id.* ¶¶ 527–30.

Despite misusing Kytch's trade secrets, Taylor and McDonald's allegedly could not timely develop a product to compete with the Kytch Solution. So as a "stall tactic," Kytch alleges, Taylor and McDonald's said the Kytch Solution Device risked serious injury to users. *Id.* ¶¶ 27–35, 231–64. According to Kytch, those statements are false. *Id.* ¶¶ 252–57. Kytch, however, does not accuse TFG of making a false public statement; Kytch named only Taylor and McDonald's in those accusations. *See id.* ¶¶ 27–35, 74, 231–64.

Kytch brought ten claims in the Underlying FAC. Three were not against TFG: The first claim for breach of contract (Count I) was against Gamble only, *id.* ¶¶ 339–60, and the claims for "False Advertising" (Count IV) and "Trade Libel" (Count V) were against Taylor only, *id.* ¶¶ 456–85. Those "False Advertising" and "Trade Libel" claims never named—or even referenced—TFG.

TFG was named in the remaining claims. As in the Underlying Initial Complaint, Kytch brought claims against each defendant for "Tortious Interference of Contract" (Count II) and for violating the Trade Secrets Act (Count III). *Id.* ¶¶ 361–455. In doing so, Kytch alleged that "Defendants acted intentionally" to interfere with and induce breaches of the NDA, *id.* ¶ 368, "misappropriated Kytch Trade Secrets," *id.* ¶ 446, and "acted willfully," *id.* ¶ 449.

Kytch also asserted claims for "Intentional Interference with Business Expectancy" (Count VI) and "Negligent Interference with Business Expectancy" (Count VII) against each defendant. *Id.* ¶¶ 486–503. In the first of those claims, Kytch asserted that "Defendants acted intentionally to induce Kytch's customers and prospective customers to discontinue their existing and prospective business relationships with Kytch" by, among other things, "misappropriating Kytch's trade secrets." *Id.* ¶ 489. Kytch alleged that "Defendants knew that their conduct was substantially certain to interfere with Kytch's economic interests" and "acted knowingly and intentionally." *Id.* ¶ 490.

The next claim was similar but said that "Defendants acted, at minimum, negligently." *Id.* ¶ 497. Both claims mentioned "unlawful statements," "product disparagement," "false advertising," and "trade libel" in passing, *id.* ¶¶ 489, 492, 497, 501, but alleged no new facts.

Next, Kytch sued each defendant for allegedly violating the California Computer Data Access and Fraud Act, CAL. PENAL CODE § 502 (Count VII). Ex. D, ¶¶ 504–09. This claim alleged "Defendants knowingly and willfully took multiple specific acts to access the computer networks and data of Kytch without permission," in violation of a criminal statute. *Id.* ¶ 505.

Kytch then sued the defendants for "Deceptive Trade Practices" under California law, CAL. BUS. & PROF. CODE § 17200 (Count IX). Ex. D, ¶¶ 510–15. In that claim, Kytch alleged that "Defendants' conduct was knowing, deliberate, willful, and intended to cause confusion, mistake or to deceive, all in blatant disregard of Kytch's rights." *Id.* ¶ 512.

Finally, Kytch sued TFG for "Breach of Contract" (Count X). *Id.* ¶¶ 516–37. According to Kytch, TFG agreed to Kytch's Terms of Service and breached that contract by, among other things, assisting in "reverse engineering" Kytch Solution Devices and "giving McDonald's and other third-parties access to the Kytch Solution Platform." *Id.* ¶ 528.

## C.   The Underlying Second Amended Complaint

In September 2022, Kytch amended its pleading again by filing the Underlying SAC. Ex. E.[2] That pleading did not make many changes to the Underlying FAC. The most notable revision was that Kytch dropped its claim for "Negligent Interference with Business Expectancy" and renumbered the subsequent claims.

## III.  Procedural History

State Auto filed this declaratory-judgment action in November 2021, seeking a declaration

---

[2]      Exhibit E is a redacted copy of the Underlying SAC obtained from TFG.

of the parties' rights and obligations under the Policy. Rec. Doc. 1. After Kytch filed the Underlying FAC, this Court granted State Auto leave to amend its pleading. Rec. Docs. 18, 20.

LEGAL STANDARDS

## I.   Summary Judgment

Summary judgment is required if "there is no genuine dispute as to any material fact and [State Auto] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Whether an insurer owes a duty to defend "is a matter of law." *Project Consulting Servs. v. Emps. Ins. Co. of Wausau*, 2021 WL 4148100, at *7 (E.D. La. Sept. 13, 2021).

## II.   Choice of Law

Whether State Auto must defend TFG is a question of Louisiana law. That is because State Auto issued the Policy to TFG in Louisiana. Ex. A at 2, 20; Ex. B at 2–4, 21; *see Lamar Advert. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 659 (5th Cir. 2005).

## III.   The Duty to Defend

An insurer's duty to defend "is determined solely by comparing the allegations in the complaint against the insured with the terms of the policy at issue—the so-called 'eight corners' rule." *XL Spec. Ins. Co. v. Bollinger Shipyards, Inc.*, 800 F.3d 178, 182 (5th Cir. 2015) (citation, internal quotation marks, and internal brackets omitted). This "requires the court to compare the complaint for which coverage is sought with the terms of the insurance policy: If there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded, the insurer must defend the insured." *Id.* (citation and internal quotation marks omitted). Courts perform this analysis "'without consideration of extraneous evidence.'" *La. Stadium & Exposition Dist. v. BFS Diversified Prods.*, 2010-0587 (La. App. 4th Cir. 9/15/10), 49 So. 3d 49, 51 (citation omitted).

"The analysis of the duty to defend begins with an examination of whether any of the facts

pled in the underlying state court petition possibly fall within matters covered under the insuring clause." *Gilchrist Constr. Co. v. Travelers Indem. Co.*, 416 F. Supp. 3d 619, 625 (W.D. La. 2019), *aff'd*, 811 F. App'x 262 (5th Cir. 2020) (per curiam). "The insured bears the burden on this issue." *Id.*; *accord Kan. City S. Ry. Co. v. Wood Energy Grp.*, 53,096 (La. App. 2d Cir. 1/15/20), 289 So. 3d 671, 675. Only if coverage exists does an insurer bear the burden of showing an exclusion applies. *See GeoVera Specialty Ins. Co. v. Joachin*, 964 F.3d 390, 394 (5th Cir. 2020). "That order is key: coverage must exist before it can be excluded." *Id.*

## IV.  Policy Interpretation

Terms in an insurance policy "are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Sibley v. Deer Valley Homebuilders, Inc.*, 45,063 (La. App. 2d Cir. 3/3/10), 32 So. 3d 1034, 1039. And when policy terms "'are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent.'" *XL Spec.*, 800 F.3d at 181–82 (citation omitted). A policy "'should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms.'" *Carrier v. Reliance Ins. Co.*, 1999-2573 (La. 4/11/00), 759 So. 2d 37, 43 (citation omitted).

These rules apply with equal force to exclusions. *See, e.g.*, *Savoie v. Anco Insulations, Inc.*, 2020-0584 (La. App. 1st Cir. 4/9/21), 322 So. 3d 1264, 1268 (enforcing the plain language in an exclusion). After all, "it is well-settled that unless a statute or public policy dictates otherwise, … insurers may limit liability and impose such reasonable conditions or limitations upon their insureds." *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 2006-1827 (La. 5/22/07), 958 So. 2d 634, 638–39. "In these circumstances, unambiguous provisions limiting liability must be given effect." *Id.* at 639.

ARGUMENT

TFG is not entitled to a defense from State Auto in the Underlying Action. Not only does the Underlying Action fail to trigger coverage under any insuring agreement of the Policy, but multiple exclusions also apply.

## I.   The Underlying Action does not trigger any coverage under the Policy.

TFG bears the burden of showing that factual allegations in the Underlying Action trigger a duty to defend. TFG cannot carry its burden, because neither Coverage A nor Coverage B applies.

### A.   The Underlying Action does not trigger Coverage A.

To trigger Coverage A, the Underlying Action would have to seek to hold TFG legally obligated to pay damages because of "bodily injury" or "property damage" that was caused by an "occurrence." Ex. A at 116; *id.* at 180. But the Underlying Action does not allege "bodily injury," "property damage," or an "occurrence" as defined by the Policy. Thus, Coverage A does not apply.

The Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person." *Id.* at 127; *id.* at 198. The Underlying Action alleges no such thing.

The Policy defines "property damage" in pertinent part to mean "[p]hysical injury to tangible property" or "[l]oss of use of tangible property." *Id.* at 129; *id.* at 139; *id.* at 201. The Underlying Action does not allege that any tangible property was lost or physically injured, and it does not seek to hold TFG liable for such loss or injury. Kytch allegedly lost profits, but that alone is not "property damage." *See, e.g.*, *Lamar*, 396 F.3d at 663. The Policy also has a definition of "property damage" that includes "[l]oss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate 'electronic data' resulting from physical injury to tangible property. *Id.* at 139. But again, there is no allegation of "physical injury to tangible property"—much less any physical injury that had consequences for "electronic data."

Finally, the Underlying Action does not allege any "property damage" or "bodily injury"

that resulted from an "occurrence." The term "occurrence" means "an accident." *Id.* at 128; *id.* at 200. An "accident" is, by definition, "unexpected." *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 678 (5th Cir. 2000). Even if the Underlying Action alleged "bodily injury" or "property damage" (it does not), it does not seek damages for an accidental or unexpected event. To the contrary, the only fair reading of the Underlying Action is that TFG knew what it was doing and acted intentionally. *See Gilchrist Constr. Co. v. Travelers Indem. Co.*, 811 F. App'x 262, 263 (5th Cir. 2020) (per curiam); *Circle C Enters. v. Assoc. Indus. Ins. Co.*, 2022 WL 16727129, at *5 (M.D. La. Nov. 4, 2022) (summarizing that "damages stemming from … intentional conduct are not 'accidents'"). Likewise, the precautions that Kytch allegedly took to protect its trade secrets show that espionage was not "unexpected" from Kytch's perspective, either. *See, e.g.*, Ex. C, ¶¶ 10–11, 43–50, 250–51; *see also Freeport-McMoRan Energy v. Mullen*, 233 F. App'x 341, 345 (5th Cir. 2007). For these reasons, there is no possibility that Coverage A applies here.

**B.    The Underlying Action does not trigger Coverage B.**

For Coverage B to apply, "the insured" must be "legally obligated to pay" money "because of 'personal and advertising injury' to which this insurance applies." Ex. A at 120 (CGL form); *id.* at 188, 201 (requiring that "ultimate net loss" must be "because of 'personal and advertising injury' to which this insurance applies," where "ultimate net loss" is "damages for which the insured is legally liable"). Here, Coverage B does not apply because the allegations in the Underlying Action do not seek to hold TFG liable for "personal and advertising injury" as defined by the Policy.

> **1.    *To trigger Coverage B, the Underlying Action would have to seek to hold TFG itself liable for publishing material that slanders or libels Kytch or that disparages Kytch's goods, products, or services.***

The Policy defines "personal and advertising injury" to mean "injury … arising out of one or more of the following offenses":

**a.**    False arrest, detention or imprisonment;

    **b.**  Malicious prosecution;

    **c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**  The use of another's advertising idea in your "advertisement"; or

    **g.**  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Ex. A at 128–29; *id.* at 200.

But of those seven subparagraphs, only subparagraph (d)—"publication … of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services"—warrants any extended discussion. Subparagraph (a) cannot apply because there is no allegation of false arrest, detention, or imprisonment. Subparagraph (b) cannot apply because there is no allegation of malicious prosecution. Subparagraph (c) cannot apply because there is no allegation of wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling, or premises. Subparagraph (e) cannot apply because there is no allegation that any publication violated a person's right to privacy. And subparagraphs (f) and (g) cannot apply because there is no allegation that TFG had any "advertisement" that infringed on someone's rights. In the Policy, "advertisement" is defined as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." Ex. A at 127; *id.* at 198. And subparagraphs (f) and (g) apply only to "your 'advertisement'"—that is, *TFG's* advertisement. *Id.* at 129; *id.* at 200. But the only "advertisement" alleged in the Underlying Action is Taylor's and McDonald's—*not* TFG's. *See, e.g.*, Ex. D, ¶¶ 231–64; Ex. E, ¶¶ 231–64. That leaves only subparagraph (d).

To be clear, though, Coverage B would apply only if the Underlying Action sought to hold

*TFG* itself liable for publishing slanderous, libelous, or disparaging materials. Coverage B applies only to "those sums that *the insured* becomes legally obligated to pay as damages because of 'personal and advertising injury.'" Ex. A at 120 (emphasis added); *see id.* at 188, 201. So under the Policy's plain text, "the insured" must be accused of being liable. *See also Bailey v. Battiest Constr. Co.*, 2000-1917 (La. App. 4th Cir. 2/6/02), 809 So. 2d 1118, 1122 (explaining that there was no coverage when it was not the insured who was "accused … of owing liability"); *Boettger v. Early Am. Ins. Co. of Montgomery*, 469 So. 2d 495, 498 (La. App. 3d Cir. 1985) (explaining that for coverage to exist, the "insured … would have to be liable for the injuries").

The mere fact that TFG is named in the Underlying Action does not mean the Underlying Action seeks to hold TFG liable for publishing slanderous, libelous, or disparaging material. Again, TFG is the insured; Taylor and McDonald's are not. Ex. A at 20; Ex. B at 21. And under the Policy, "personal and advertising injury" must be "caused by an offense arising out of [TFG's] business"—not another's business. Ex. A at 121; *id.* at 188. Thus, Coverage B does not apply unless the Underlying Action seeks to hold TFG either directly or vicariously liable for "personal and advertising injury." *See* 7A STEVEN PLITT ET AL., COUCH ON INSURANCE § 103:22 (3d ed. 2022) ("Where coverage is expressed in terms of consequences for which the insured is legally liable, it necessarily follows that the tortious act of a third person who is neither the insured's agent nor employee imposes no liability on the insured and, therefore, none on the insurer.").[3]

Simply put, then, Coverage B could apply only if the Underlying Action sought to hold TFG itself liable for publishing material that slandered or libeled Kytch or that disparaged Kytch's goods, products, or services.

---

[3]       *See also, e.g.*, *Burrows v. Exec. Prop. Mgmt. Co.*, 2013-0914 (La. App. 4th Cir. 3/12/14), 137 So. 3d 698, 706–07 (finding no coverage for a named insured when the insurer agreed to pay what "the *insured* becomes legally obligated to pay," and the wrongdoers were not the insured's employees).

2.    *The allegations in the Underlying Action do not trigger Coverage B.*

The factual allegations in the Underlying Action do not allege that TFG was involved with publishing slanderous, libelous, or disparaging material. Nor do the causes of action in the Underlying Action seek to hold TFG liable for such actions. Instead, setting aside conclusory statements in the pleadings, the Underlying Action seeks to hold TFG liable for misusing trade secrets and breaches of contract. That does not trigger Coverage B.

a.    <u>Only factual allegations can trigger the duty to defend.</u>

When considering allegations in the Underlying Action, three related principles guide the analysis. *First*, "there is a vast difference between allegations of facts and statements of conclusions in pleadings." *Guidry v. Zeringue*, 379 So. 2d 813, 816 (La. App. 4th Cir. 1980). Courts therefore "look only to the *factual* allegations in the complaint," and "'statements of conclusions in the complaint that are unsupported by factual allegations will not trigger a duty to defend.'" *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 523 (5th Cir. 2005) (citation omitted). Put another way, "magic words" are not enough. *See, e.g.*, *LaFever v. Whitely*, 613 So. 2d 1007, 1009 (La. App. 1st Cir. 1992) ("The mere addition of the word 'negligently' to the allegations of [the] petition does not change the *facts* alleged therein[.]"); *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 453 (5th Cir. 2014) (holding that an insurer owed no duty to defend, despite the complaint's "repeated invocation of the word 'negligence'").[4]

*New Orleans Deli & Dining, LLC v. Continental Casualty Co.*, 2011 WL 4551165 (E.D.

---

[4]    *See also, e.g.*, *Guste v. Lirette*, 2017-1248 (La. App. 1st Cir. 6/4/18), 251 So. 3d 1126, 1133–34 (explaining that "courts look to *factual*, not conclusory, allegations of the petition to determine whether the insurer must defend"); *Ebarb v. Boswell*, 51,445 (La. App. 2d Cir. 7/19/17), 224 So. 3d 523, 528 (similar); *XL Spec.*, 800 F.3d at 182 ("The court considers the facts alleged in the underlying complaint rather than conclusory labels applied to claims."); *Henly v. Phillips Abita Lumber Co.*, 2006-1856 (La. App. 1st Cir. 10/3/07), 971 So. 2d 1104, 1114 ("It is the allegations of fact contained in the petition, and not the conclusions, that determine the obligation to defend.").

La. Sept. 29, 2011), is but one example. There, restaurant workers alleged their employer did not distribute tips, so they sued the employer for breach of contract, negligence, and intentional torts. *Id.* at *1. The employer sued its insurer, alleging a breach of the duty to defend. *Id.* at *2. A court in this District held that though the workers had sued for negligence, their claims "[did] not sound in negligence, but rather [in] intentional tort," which were not covered. *Id.* at *4. Thus, the insurer had no duty to defend. *Id.*; *see also, e.g.*, *Gilchrist*, 416 F. Supp. 3d at 622, 628–29 (holding that because the factual allegations were about "intentional conduct," an insurer had no duty to defend against a breach-of-contract claim).

*Second*, in assessing the duty to defend, a court must consider all allegations. That is, since a court must "assume all allegations are true," it cannot look at select paragraphs "in a vacuum." *Choice Found. v. Law Indus.*, 2021-0431 (La. App. 4th Cir. 3/2/22), 336 So. 3d 501, 509. Nor can it ignore factual allegations. *See Hickey v. Allstate Ins. Co.*, 2014-1088 (La. App. 3d Cir. 3/4/15), 159 So. 3d 1167, 1174–75.

*Third*, it matters what the underlying complaint does *not* say: "If a petition does not allege facts within the scope of coverage, … an insurer is not legally required to defend a suit against its insured." *Crosstex Energy Servs. v. Tex. Brine Co.*, 2017-0895 (La. App. 1st Cir. 12/21/17), 240 So. 3d 932, 936. Louisiana "courts will not read into a complaint an allegation … that has not been made." *Lamar*, 396 F.3d at 664.[5]

Applying these principles here shows that the Underlying Action does not trigger coverage.

      b.    <u>The Underlying Action does not allege facts showing that TFG published slanderous, libelous, or disparaging materials.</u>

---

[5]      *See also, e.g.*, *Holzenthal v. Sewerage & Water Bd. of New Orleans*, 2006-0796 (La. App. 4th Cir. 1/10/07), 950 So. 2d 55, 84 (relying on a lack of factual allegations to hold there was no duty to defend); *KLL Consultants, Inc. v. Aetna Cas. & Sur. Co. of Ill.*, 99-14 (La. App. 5th Cir. 6/1/99), 738 So. 2d 691, 696 (similar).

The Underlying Action does not allege facts suggesting that TFG published slanderous, libelous, or disparaging material. This is not because Kytch is shy about making specific allegations. To the contrary, Kytch prominently alleges that TFG misappropriated trade secrets and induced breaches of contract. But Kytch does not link TFG to any disparaging publication.

The Underlying Initial Complaint does not mention purportedly slanderous, libelous, or disparaging materials; it is all about obtaining Kytch's trade secrets. The Underlying FAC and SAC add allegations about slander, trade libel, and product disparagement, but those factual allegations never mention TFG. For instance, paragraphs 231–64 of the Underlying FAC and SAC are titled "Taylor and McDonald's Launch a False Advertising Campaign to Unlawfully Compete Against Kytch," and they never reference TFG. Kytch also specifically attacks "Taylor and McDonald's advertisements." Ex. D, ¶ 248; *see also, e.g.*, *id.* ¶¶ 249–52, 265, 315, 458; Ex. E, ¶¶ 248–52, 265, 315, 457. Again, TFG is left out. Kytch's silence about TFG is telling, and it means there is no duty to defend. TFG cannot pencil in factual allegations that do not exist. *See Crosstex*, 240 So. 3d at 936.

   c.   Claims in the Underlying Action do not seek to hold TFG liable for publishing slanderous, libelous, or disparaging materials.

Kytch's substantive claims also do not seek to hold TFG liable for publishing slanderous, libelous, or disparaging material. Consider each of the causes of action.

The Underlying Initial Complaint focuses on attempts to acquire Kytch's trade secrets. The claims against TFG do not make even conclusory assertions about the publication of slanderous, libelous, or disparaging materials, and thus they do not trigger Coverage B. The claim for "Tortious Interference of Contract" (Count II) is about interfering with, and inducing the breach of, the Kytch Trial Agreement. Ex. C, ¶¶ 240–46. The Trade Secrets Act claim (Count III) is about misappropriating Kytch's trade secrets. *Id.* ¶ 247–65. And when Kytch brings these claims in its later

pleadings, it does not alter the essence of either. *See* Ex. D, ¶¶ 361–455; Ex. E, ¶¶ 361–454.

In the same way, claims against TFG under the Computer Data Access and Fraud Act (FAC Count VIII; SAC Count VII) and for breach of contract (FAC Count X; SAC Count IX) have nothing to do with wrongful publication. The former is about accessing Kytch's networks and data without permission. *See* Ex. D, ¶¶ 504–09; Ex. E, ¶¶ 493–98. The latter alleges TFG breached its contractual obligations by participating in developing a competing product; helping disassemble, reverse-engineer, and distribute a Kytch Solution Device; and giving others access to the Kytch Solution Platform. *See* Ex. D, ¶¶ 516–37; Ex. E, ¶¶ 505–26. None of this triggers Coverage B.

Several claims are not against TFG at all. The first claim in each pleading is against Gamble only. Ex. C, ¶¶ 218–39; Ex. D, ¶¶ 339–60; Ex. E, ¶¶ 339–60. Likewise, claims in the Underlying FAC and SAC for "False Advertising" (Count IV) and "Trade Libel" (Count V) are against Taylor only, and they never even refer to "Defendants" generally—much less TFG specifically. Ex. D, ¶¶ 456–85; Ex. E, ¶¶ 455–84. Of course, a claim cannot seek to hold TFG legally obligated to pay damages if that count is not asserted against TFG.

Kytch's claim for "Deceptive Trade Practices" (FAC Count IX; SAC Count VIII) makes a conclusory accusation that "Defendants have engaged in unlawful, unfair, and otherwise prohibited business acts and practices, as outlined above." Ex. D, ¶ 511; Ex. E, ¶¶ 499–504. But that non-specific, generic assertion includes no facts, so it also cannot trigger the duty to defend. *See Chet Morrison Contractors, LLC v. One Beacon Am. Ins. Co.*, 132 F. Supp. 3d 825, 830 (E.D. La. 2015).

Finally, the claims for "Intentional Interference with Business Expectancy" (Count VI) and " Negligent Interference with Business Expectancy" (FAC Count VII) do not trigger Coverage B. Those claims are about interference with Kytch's relationships with its customers. Ex. D, ¶¶ 486–503; Ex. E, ¶¶ 485–92. But the claims refer to "Defendants" generally, not TFG specifically. *See*

*id.* Just as importantly, the passing references to "unlawful statements," "product disparagement," "false advertising," and "trade libel" by "Defendants" contain no factual allegations. Ex. D, ¶¶ 489, 492, 497, 501; Ex. E, ¶¶ 488, 491. None of the factual allegations in the rest of the pleadings implicate TFG in publishing slanderous, libelous, or disparaging materials. And because "[n]o new facts are alleged" in these causes of action, they cannot trigger a duty to defend. *Chalmers, Collins & Alwell, Inc. v. Burnett & Co.*, 2015-249 (La. App. 3d Cir. 10/7/15), 175 So. 3d 1100, 1104 (holding that a catch-all allegation of liability did not trigger a duty to defend); *see also, e.g.*, *Coleman*, 418 F.3d at 523.

More broadly, the "Interference with Business Expectancy" claims do not seek to hold each defendant liable for every possible type of wrongdoing. Instead, the conclusory assertions in those claims simply reference prior, specific allegations against the respective defendants. Those claims refer to inducing others to help develop a competing product "using Kytch's proprietary insights," Ex. D, ¶¶ 489, 497; Ex. E, ¶ 488, and Kytch alleges facts showing that TFG engaged in that wrong-doing, *see, e.g.*, Ex. D, ¶¶ 183–91, 271; Ex. E, ¶¶ 183–91, 271. Likewise, the Underlying FAC and SAC allege that Taylor and McDonald's engaged in libel, false advertising, and product dispar-agement. Ex. D, ¶¶ 231–64; Ex. E, ¶¶ 231–64. Conclusory references to "unlawful statements," "product disparagement," "false advertising," or "trade libel" are mere call-backs to those prior allegations against Taylor and McDonald's; they are not new allegations against TFG.

For these reasons, the allegations in the Underlying Action do not trigger Coverage B.

## II.   Numerous exclusions also unambiguously bar any coverage under the Policy.

Because TFG cannot carry its burden of showing that the Underlying Action triggers any coverage under the Policy, there is no need to assess whether an exclusion applies. *See Ticknor v. Rouse's Enters.*, 2 F. Supp. 3d 882, 896–97 (E.D. La. 2014). Even so, when an underlying com-plaint "alleges facts that exclude coverage," "there is no duty to defend." *Kent & Smith Holdings,*

*L.L.C. v. HDI Glob. Ins. Co.*, 344 F. Supp. 3d 878, 888 (M.D. La. 2018) (citing *Jackson v. Lajaunie*, 270 So. 2d 859, 864 (La. 1972)).[6] And here, numerous exclusions unambiguously apply.

### A.   The exclusion for a knowing violation of rights applies.

The Policy excludes coverage for injuries "caused by or at the direction of [TFG] with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" Ex. A at 121; *id.* at 189. This exclusion requires intent. *See Looney Ricks Kiss Architects, Inc. v. Bryan*, 2014 WL 931781, at *6 (W.D. La. Mar. 10, 2014). But as alleged by Kytch, disparagement of Kytch was done with full knowledge that the statements were false and would harm Kytch. *See, e.g.*, Ex. D, ¶¶ 252, 258–62; Ex. E, ¶¶ 252, 258–62. Likewise, TFG's alleged acts were allegedly done with knowledge that they would harm Kytch. "An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur." *Great Am. Ins. Co. v. Gaspard*, 608 So. 2d 981, 985 (La. 1992). Thus, claims against TFG are "factually based in intentional conduct," *QBE Specialty Ins. v. Better Waste Disposal, LLC*, 2011 WL 5238487, at *5 n.4 (W.D. La. Nov. 1, 2011), and this exclusion applies. Consider four claims:

*First*, the claim for "Tortious Interference of Contract" is a tort claim that, under California law, requires an "intentional act[] designed to induce a breach or disruption of the contractual relationship." *Ixchel Pharma, LLC v. Biogen, Inc.*, 470 P.3d 571, 575 (Cal. 2020).[7] And as alleged, "Defendants acted intentionally to interfere with and induce Gamble and the others … to breach the Kytch Trial Agreement." Ex. D, ¶ 368; *see* Ex. C, ¶ 243; Ex. E, ¶ 367.

---

[6]     *See also, e.g.*, *Fid. & Guar. Ins. Underwriters, Inc. v. City of Kenner*, 894 F.2d 782, 784 (5th Cir. 1990) ("[I]f the allegations of the plaintiff's petition unambiguously exclude coverage, the insurer is not obligated to furnish a defense."); *Jackson*, 270 So. 2d at 864 ("Since the petition alleged the facts, and the facts showed that coverage was excluded, there was no obligation … to defend [the] claim.").

[7]     Kytch brings its claims under California law.

*Second*, the claim for "Intentional Interference with Business Expectancy" is a tort claim that requires "intentionally wrongful acts designed to disrupt" an economic relationship. *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 388 P.3d 800, 803 (Cal. 2017). And according to Kytch, "Defendants acted intentionally to induce Kytch's customers and prospective customers to discontinue their existing and prospective business relationships with Kytch." Ex. D, ¶ 489; Ex. E, ¶ 488. For instance, Kytch alleges that:

- "Defendants knew that their conduct was substantially certain to interfere with Kytch's economic interests, namely its ability to retain existing customers and obtain new customers." Ex. D, ¶ 490; Ex. E, ¶ 489.

- "Defendants acted knowingly and intentionally and with reckless disregard of the foreseeable consequences of its actions." Ex. D, ¶ 490; Ex. E, ¶ 489.

- "Defendants' conduct was intended to intimidate and scare Kytch's customers and prospective customers into ceasing to do business with Kytch and/or to instead adopt Taylor's forthcoming competing product or to continue using Taylor's and TFG's costly replacement parts and repair services at an astronomical and unnecessary rate." Ex. D, ¶ 491; Ex. E, ¶ 490.

These allegations trigger the exclusion. To be sure, the Underlying FAC did make an alternative assertion that "Defendants acted, at minimum, negligently." Ex. D, ¶ 497. But "[t]he mere addition of the word 'negligently' … does not change the *facts* alleged." *LaFever*, 613 So. 2d at 1009. Setting Kytch's "conclusory labels" aside, and focusing on "the facts alleged," shows that the Underlying Action is about *intentional* violations of Kytch's rights. *XL Spec.*, 800 F.3d at 182.

*Third*, the Computer Data Access and Fraud Act claim repeatedly asserts that "Defendants" "knowingly," "willfully," and "without permission" accessed Kytch's computer systems and obtained Kytch's property. Ex. D, ¶ 505; Ex. E, ¶ 494. Further, liability under that law "requires the person to act 'knowingly' and 'without permission' in committing computer-related crimes." *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1161 (E.D. Cal. 2017).

*Fourth*, the "Deceptive Trade Practices" claim states that "Defendants' conduct was know-

ing, deliberate, willful, and intended to cause confusion, mistake or to deceive, all in blatant disregard of Kytch's rights." Ex. D, ¶ 512; Ex. E, ¶ 501. The Court cannot ignore that allegation. *See Hickey*, 159 So. 3d at 1174. So based on the plain language of the Policy and the facts alleged, the exclusion for a knowing violation of the rights of another applies.

> **B.    The exclusions for access or disclosure of confidential information apply.**

The Policy also contains multiple provisions that exclude damage arising out of access to or disclosure of confidential information. For example, the Policy modifies Coverage B this way:

> This insurance does not apply to:
> **Access Or Disclosure of Confidential Or Personal Information**
> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

Ex. A at 133; *id.* at 203; *see also id.* at 139. Similar provisions also modify Coverage A to exclude "[d]amages arising out of … [a]ny access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information." *Id.* at 133 (emphasis omitted); *id.* at 203; *see also id.* at 139.

Each of these exclusions uses the phrase "arising out of." That is significant, because when a policy "excludes coverage for claims 'arising out of' certain conduct, 'the exclusion is given a broad, general, and comprehensive interpretation.'" *Cont'l Cas. Co. v. Smith*, 243 F. Supp. 2d 576, 581 (E.D. La. 2003) (citation omitted). The phrase "arising out of" means "originating from," "growing out of," or "flowing from." *Bernard v. Ellis*, 2011-2377 (La. 7/2/12), 111 So. 3d 995, 1005; *see Red Ball Motor Freight, Inc. v. Emps. Mut. Liab. Ins. Co. of Wis.*, 189 F.2d 374, 378 (5th Cir. 1951). And while that phrase "implies an element of causality," *Stills v. Mims*, 42,799 (La. App. 2d Cir. 12/5/07), 973 So. 2d 118, 121, it is mere "but-for" causation—not proximate

causation. *See Forrest ex rel. Jack Thrash Forrest III Tr. v. Ville St. John Owners Ass'n*, 2018-0175 (La. App. 4th Cir. 11/7/18), 259 So. 3d 1063, 1074 (explaining that "arising out of" is "not ambiguous," and applying a "but-for" causation test); *Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co.*, 677 F.3d 250, 257 (5th Cir. 2012).[8] Thus, an injury "arises out of" conduct if that injury would not exist but-for that conduct.

Here, the Underlying Action repeatedly alleges—in detail—that TFG improperly accessed and disclosed Kytch's confidential information. For example, Kytch specifically alleges that TFG "gained access to Kytch's trade secrets and Confidential Information." Ex. D, ¶ 271; Ex. E, ¶ 271. Without that access or disclosure, the claims against TFG would not exist.

In addition, Kytch sued TFG under the Trade Secrets Act, alleging that TFG accessed and misappropriated Kytch's trade secrets. Ex. D, ¶¶ 440, 446; Ex. E, ¶¶ 439, 445. Similarly, the claim under the Computer Data Access and Fraud Act is, at least in part, about accessing Kytch's data without permission. Ex. D, ¶ 505; Ex. E, ¶ 494. And the "Tortious Interference of Contract" claim alleges that "Defendants" induced breaches of contractual obligations that prevented using the Kytch Solution to build a competing device. Ex. D, ¶ 368; Ex. E, ¶ 367; *see* Ex. C, ¶¶ 241–45. All these claims arise out of alleged access to, or disclosure of, Kytch's confidential information. Thus, the exclusion for access or disclosure of confidential information applies.

### C.    The exclusion for infringement of trade secrets applies.

The Policy also excludes injuries caused by the infringement of trade secrets. In particular, it "does not apply to … 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." Ex. A at 121; *id.* at 189. Again, this exclusion applies. The Underlying Action specifically alleges that TFG "misappropri-

---

[8]    *See also Avila v. Vill. Mart, LLC*, 2021 WL 4439579, at *5 (E.D. La. Sept. 28, 2021) ("Louisiana courts have applied a 'but for' causation test to indemnity provisions containing 'arising out of' language.").

ated Kytch's trade secrets and attempted to reverse engineer the KSD." Ex. D, ¶ 61; *see id.* ¶ 278; Ex. E, ¶¶ 61, 278. If TFG had not engaged in that alleged infringement, then it would not be facing liability now. Thus, the alleged injury "arises out of" the alleged infringement.

TFG's alleged infringement is found throughout Kytch's claims. For instance, the "Tortious Interference of Contract" claim asserts that TFG induced breaches of the Kytch Trial Agreement to help develop a competing product. *See* Ex. C, ¶¶ 241–46; Ex. D, ¶¶ 365–68; Ex. E, ¶¶ 364–67. The claim under the Trade Secrets Act alleges that "Defendants have misappropriated Kytch Trade Secrets." Ex. D, ¶ 446; Ex. E, ¶ 445. And the "Interference with Business Expectancy" claims allege that unspecified "Defendants" "use[d] Kytch's proprietary insights." Ex. D, ¶¶ 489, 496; Ex. E, ¶ 488; *see also* Ex. D, ¶ 492 (alleging Defendants "misappropriat[ed] Kytch's trade secrets"). Of course, as shown in Part I.B.2 of the Argument, some allegations are so general that they do not trigger coverage at all. But TFG cannot have it both ways. If the assertions in the "Interference with Business Expectancy" claims, for example, are enough to trigger coverage, then those assertions must also be enough to trigger the exclusion for trade-secret infringement. In sum, the exclusion for infringement of trade secrets applies.

### D.    The exclusion for breach of contract applies.

The Policy also excludes "personal and advertising injury" "arising out of a breach of contract." Ex. A at 121; *id.* at 189. This exclusion also applies here. Kytch asserts a cause of action for "Breach of Contract" against TFG. According to Kytch, TFG breached contractual duties by: participating in the development of a competing product; assisting in the disassembly, reverse engineering, and distribution of the Kytch Solution Device; and giving others access to the Kytch Solution Platform. Ex. D, ¶ 528; Ex. E, ¶ 517.

There is no doubt the breach-of-contract exclusion applies to the breach-of-contract claim. *See Hanover Ins. Co. v. Plaquemines Par. Gov't*, 2015 WL 1268314, at *3 (E.D. La. Mar. 19,

2015). But the exclusion also applies more broadly. Any time Kytch relies on a duty that is imposed only by contract—not a duty that would exist without a contract—and the alleged injury would not have occurred but-for the breach, then the breach-of-contract exclusion applies. *See Perniciaro v. McInnis*, 2018-0133 (La. App. 4th Cir. 9/7/18), 255 So. 3d 1223, 1234 (holding that a breach-of-contract exclusion barred an intentional-tort claim); *Everett v. Philibert*, 2008-2270 (La. App. 1st Cir. 5/8/09), 13 So. 3d 616, 620 (same for negligence claims). And if TFG had kept its purported promise to maintain the secrecy of the Kytch Solution and not compete with Kytch, then it would not face liability to Kytch now. Thus, the breach-of-contract exclusion applies here.

### E.    The exclusion for criminal acts applies.

Finally, the Policy excludes personal and advertising injury "arising out of a criminal act committed by or at the direction of the insured." Ex. A at 121; *id.* at 189. The Computer Data Access and Fraud Act alleged by Kytch is a criminal statute; a violation of that Act is a "public offense." CAL. PENAL CODE § 502(c); *see Burks v. United States*, 287 F.2d 117, 122 (9th Cir. 1961) ("In California 'a public offense' is synonymous with 'a crime.'"). TFG's alleged violations of that Act, *see* Ex. D, ¶ 505; Ex. E, ¶ 494, would be crimes, *see* CAL. PENAL CODE § 502(c)–(d). The criminal-act exclusion therefore applies. *See Grice v. ISI Alarms NC, Inc.*, 2014 WL 1600396, at *9 (E.D. La. Apr. 21, 2014) (applying a criminal-act exclusion because the insured was allegedly "involved in … criminal behavior").

### CONCLUSION

For these reasons, this Court should grant State Auto's motion for summary judgment and declare that State Auto has no duty to defend TFG in the Underlying Action—not as a result of the Underlying Initial Complaint, the Underlying FAC, or the Underlying SAC. There is no coverage. Even if there were, there are clear and unambiguous exclusions that defeat it.

Respectfully submitted this the 15th day of March, 2023,

**MAYNARD COOPER & GALE, P.C.**

/s/ *Christopher C. Frost*
CHRISTOPHER C. FROST (*pro hac vice*)
JOSHUA B. BAKER (*pro hac vice*)
CALEB C. WOLANEK (*pro hac vice*)
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
T: (205) 254-1000
F: (205) 254-1999
jbaker@maynardcooper.com
cfrost@maynardcooper.com
cwolanek@maynardcooper.com

**SCANDURRO & LAYRISSON, L.L.C.**
TIMOTHY D. SCANDURRO, Bar #18424
DEWEY M. SCANDURRO, Bar #23291, T.A.
607 St. Charles Avenue
New Orleans, LA 70130
T: (504) 522-7100
F: (504) 529-6199
tim@scanlayr.com
dewey@scanlayr.com

*Attorneys for Plaintiff–Counter-Defendant*
*State Auto Property and Casualty Insurance Co.*